408 S.E.2d 684

Mary E. TORRENCE, Plaintiff Below, Appellee,

v.

Roberto E. KUSMINSKY, Charleston Area Medical Center, David Maxwell Gray, Jean A. Bjorling, and Unknown Physician Consultant, Defendants Below,

Charleston Area Medical Center, David Maxwell Gray, Jean A. Bjorling, and Unknown Physician Consultant, Appellants.

Mary E. TORRENCE, Appellee,

v.

Roberto E. KUSMINSKY, Charleston Area Medical Center, David Maxwell Gray, Jean A. Bjorling, and Unknown Physician Consultant, Defendants Below,

Roberto E. Kusminsky, Appellant.

Nos. 19864, 19865.

Supreme Court of Appeals of West Virginia.

Submitted May 15, 1991.

Decided July 29, 1991.

Rudolph L. di Trapano, Melissa M. Hambrick, Lonnie C. Simmons, Di Trapano & Jackson, Charleston, W.Va., for appellee Mary E. Torrence.

David L. Shuman, J. Victor Flanagan, Shuman, Annand & Poe, Charleston, W.Va., for appellant Roberto E. Kusminsky.

Ralph C. Dusic, Jr., Carol P. Smith, Kay, Casto, Chaney, Love & Wise, Charleston, W.Va., for appellants Charleston Area Medical Center, David Maxwell Gray, Jean A. Bjorling, and Unknown Physician Consultant.

MILLER, Chief Justice:

Dr. Roberto E. Kusminsky and Charleston Area Medical Center (CAMC)[1] appeal a final order of the Circuit Court of Kanawha County, dated November 27, 1989, which denied their motions for judgment notwithstanding the verdict, for a new trial, and for alteration or amendment of the judgment. We affirm the circuit court's final order.[2]

### I.

At approximately 9:00 p.m. on August 27, 1980, Mary Torrence went to the emergency room at CAMC complaining of severe abdominal pain. Because Ms. Torrence did not have her own surgeon, she was admitted as a surgical service patient.

---

1. Dr. David Maxwell Gray and Dr. Jean Bjorling were residents at CAMC at the time this cause of action arose. CAMC does not dispute that it would be vicariously liable for the negligent acts of these two employees. Accordingly, we will refer to these three appellees collectively as CAMC.

2. We have consolidated the appeals of Dr. Kusminsky and CAMC into this single opinion.

Surgical service is a teaching service for residents at the hospital. Under this program, residents gain experience and training while working on emergency room patients.[3] The program had several physicians, including Dr. Kusminsky, who supervised these residents on a daily basis. Moreover, the supervising physicians had to be on-call for the emergency room on a rotational basis.

Ms. Torrence was initially seen by Dr. David Maxwell Gray, a first-year resident, and Dr. Jean Bjorling, the chief resident of general surgery.[4] The two residents took Ms. Torrence's medical history, examined her, and ordered a series of tests. After receiving the results of these tests, both doctors concluded that Ms. Torrence had appendicitis and needed an immediate operation.

Because Dr. Gray and Dr. Bjorling were still in training, the hospital's policy required that they notify the supervising physician on-call before they operated. Indeed, the hospital policy required that there be a licensed physician in attendance during all surgical procedures. After being notified, Dr. Kusminsky apparently agreed with the students' diagnosis and immediately came to the hospital to assist in the surgery.

In the early-morning hours of August 28, 1980, Mary Torrence underwent an exploratory laparotomy,[5] which was performed by Dr. Kusminsky and assisted by Dr. Bjorling and Dr. Gray. After examining the appendix and a small section of Ms. Torrence's bowel, the doctors observed a brownish fluid in her abdomen. Noting that such a condition was unusual, the surgeons extended their incision so that they could explore the ovaries.

Sometime after the incision was lengthened, a third resident physician, Dr. Wayne Heinessen, the chief resident of obstetrics and gynecology, was called into the operating room.[6] Dr. Heinessen agreed with Dr. Kusminsky that Ms. Torrence had a ruptured corpus luteum cyst and that no treatment of the ovaries was necessary.[7] Although Ms. Torrence did not have appendicitis, the doctors removed her appendix, apparently in conformity with standard medical procedure.

Ms. Torrence remained in the hospital until September 1, 1980. On the evening following her release, she once again suffered severe abdominal pain and began to vomit profusely. The next day she was readmitted into the hospital. Following a series of unavailing conservative treatments,[8] Ms. Torrence retained the services of another physician, Dr. James Kessell. Upon examining Ms. Torrence, Dr. Kessell found her to be extremely dehydrated and immediately ordered a second surgery.

During the second operation, Dr. Kessell found adhesions so dense that they had obstructed Ms. Torrence's bowel. Moreover, a biopsy revealed that Ms. Torrence

---

3. West Virginia University School of Medicine had established a residency program in Charleston, West Virginia, in conjunction with CAMC. Although not fully developed in the record, West Virginia University apparently had a contractual relationship with CAMC in which individuals who had graduated from medical school could do their residency.

4. The chief resident of general surgery is a resident who is in his fifth and final year of training.

5. A laparotomy is a surgical incision through the abdominal section. *See Dorland's Illustrated Medical Dictionary* 836 (25th ed. 1974).

6. Apparently, Dr. Heinessen is the "unknown physician consultant" sued in the complaint. It also appears that Dr. Heinessen is dead.

7. A corpus luteum cyst is a cyst on the ovary caused by a serous accumulation developed from the corpus luteum. This is a natural phenomenon and does not require any medical treatment.

8. Ms. Torrence was initially given a drug called Compazine which was supposed to relieve her nausea. Unfortunately, Ms. Torrence was given excessive doses of the drug over a twenty-four hour period. As a result, Ms. Torrence suffered from torticollis. Torticollis is an abnormal condition in which the head is inclined to one side as a result of the contraction of the muscles on

suffered from endometriosis.[9] Dr. Kessell observed old blood near where the appendix had been.[10] Dr. Kessell testified that blood can promote the adhesions. Dr. Kessell removed the adhesions and resected the bowel. He also lavaged her abdomen to remove all of the old blood.

On August 27, 1982, Ms. Torrence sued the appellees for medical malpractice. She contended that they failed to properly diagnose her endometriosis and that she received improper medical treatment. Following an eight-day trial, the jury returned a verdict of $207,000. Moreover, the jury found CAMC 60 percent negligent and Dr. Kusminsky 40 percent negligent. We first consider CAMC's assertions of error.

## II.

### A.

The chief error urged by CAMC was that the trial court erred in refusing to instruct the jury that Dr. Kusminsky was an independent contractor. Because he was an independent contractor, CAMC argues that it could not be liable for his negligence. In support of its contention that Dr. Kusminsky was an independent contractor, the hospital notes: he was not an employee of CAMC, but rather was an employee of West Virginia University; he received no compensation from CAMC; and his patients were billed for his services through the University health service. Moreover, CAMC asserts that Ms. Torrence chose Dr. Kusminsky as her surgeon.

Thus, CAMC relies on *Cross v. Trapp*, 170 W.Va. 459, 294 S.E.2d 446 (1982), where we held that a hospital is not liable for the negligent acts of a patient's privately retained physician. At issue in *Cross*

was whether the patient consented to an operation performed by his privately retained doctor. In Syllabus Point 7 of *Cross*, we held that the negligent acts of a privately retained doctor are not generally imputed to the hospital where he operates or treats the patient:

"When a patient asserts that a particular method of medical treatment, such as surgery, was performed by the patient's privately retained physician without the patient's consent, the hospital where that treatment was performed will ordinarily not be held liable to the patient upon the consent issue, where the physician involved was not an agent or employee of the hospital during the period in question."

Ms. Torrence counters that her situation was different from that of the patient in *Cross v. Trapp, supra.* She contends that she did not select Dr. Kusminsky as her physician, but had no choice but to accept his services. She asserts that Syllabus Point 2 of *Thomas v. Raleigh General Hospital*, 178 W.Va. 138, 358 S.E.2d 222 (1987), is controlling. In *Thomas*, the patient sued the hospital because of an injury received through an anesthesiologist's misplacement of an endotracheal tube. The hospital contended it could not be liable because the anesthesiologist was an independent contractor. The trial court granted summary judgment in favor of the hospital, but we reversed, stating in Syllabus Point 2 of *Thomas:*

"Where a patient goes to a hospital seeking medical services and is forced to rely on the hospital's choice of physician to render those services, the hospital may be found vicariously liable for the physician's negligence." [11]

that side of the neck. *See Mosby's Medical & Nursing Dictionary* 1134 (2d ed. 1986).

**9.** Endometriosis is a condition in which tissue more or less perfectly resembling the uterine mucous membrane (the endometrium) occurs aberrantly in various locations in the pelvic cavity. *Dorland's Illustrated Medical Dictionary* at 518.

**10.** Apparently, Ms. Torrence's stomach had not been lavaged during the first operation. Lavage is the irrigation or washing out of an organ such

as a stomach or a bowel. *Dorland's Illustrated Medical Dictionary* at 839.

Dr. Kessell and Dr. Bjorling both testified that the failure to lavage the stomach could cause chemical peritonitis, which in turn can cause adhesions to form.

**11.** In *Thomas*, the patient went to the emergency room at Raleigh General Hospital. The patient was admitted into the hospital for a possible repair of a hernia. He was given anesthesia and a mini-laparotomy was performed. Follow-

In *Thomas*, we cited the Annotation in 51 A.L.R.4th 235 (1987) and found persuasive the opinion in *Paintsville Hospital Co. v. Rose*, 683 S.W.2d 255 (Ky.1985), which had a fact pattern similar to the present case. The unconscious plaintiff was taken to the emergency room with a facial injury. The doctor did not properly read the cranial x-rays and failed to diagnose a skull fracture with subdural hematoma. The patient died, and his administrator brought suit against the doctor and the hospital.

As in the present case, the hospital claimed it should not be liable, inasmuch as the doctor was not its employee and simply staffed the emergency room on a rotational basis. The hospital contended that the parents of the deceased, who had come to the emergency room, never relied on the fact that the doctor was an employee of the hospital as a prerequisite to accepting his treatment. The Kentucky Supreme Court rejected these arguments and found the ostensible agency theory applicable:

"Further, the cases applying the principle of ostensible agency to the hospital/emergency room physician situation, without exception, do not require an express representation to the patient that the treating physician is an employee of the hospital, nor do they require direct testimony as to reliance. A general representation to the public is implied from the circumstances. Without exception evidence sufficient to invoke the doctrine has been inferred from circumstances similar to those shown in the present case, absent evidence that the patient knew or should have known that the treating physician was not a hospital employee when the treatment was performed (not afterwards)." 683 S.W.2d at 256.

As the Kentucky Supreme Court further explained, "few courts have failed to recognize the soundness of this application and ... [it] has been generally applied not only to anesthesiologists but to pathologists, radiologists, and emergency room physicians,

all of whom share the common characteristic of being supplied through the hospital rather than being selected by the patient." 683 S.W.2d at 256–57. A substantial majority of courts are in accord with *Rose*. *See e.g., Heddinger v. Ashford Memorial Community Hosp.*, 734 F.2d 81 (1st Cir. 1984); *Vanaman v. Milford Memorial Hosp., Inc.*, 272 A.2d 718 (Del.1970); *Irving v. Doctors Hosp. of Lake Worth, Inc.*, 415 So.2d 55 (Fla.App.), *review denied*, 422 So.2d 842 (1982); *Mehlman v. Powell*, 281 Md. 269, 378 A.2d 1121 (1977); *Arthur v. St. Peters Hosp.*, 169 N.J.Super. 575, 405 A.2d 443 (1979); *Albain v. Flower Hosp.*, 50 Ohio St.3d 251, 553 N.E.2d 1038 (1990); *Smith v. St. Francis Hosp.*, 676 P.2d 279 (Okla.App.1983); *Themins v. Emanuel Lutheran Charity Bd.*, 54 Or.App. 901, 637 P.2d 155 (1981), *review denied*, 292 Or. 568, 644 P.2d 1129 (1982); *Simmons v. St. Clair Memorial Hosp.*, 332 Pa.Super. 444, 481 A.2d 870 (1984); *Edmonds v. Chamberlain Memorial Hosp.*, 629 S.W.2d 28 (Tenn.App.1981); *Adamski v. Tacoma Gen. Hosp.*, 20 Wash.App. 98, 579 P.2d 970 (1978); *Pamperin v. Trinity Memorial Hosp.*, 144 Wis.2d 188, 423 N.W.2d 848 (1988). In essence, "[t]he courts in these cases concluded that despite the fact that a physician holds independent contractor status with respect to a hospital, he *may* nonetheless be an agent of the hospital with respect to the patient." *Capan v. Devine Providence Hosp.*, 287 Pa.Super. 364, 368, 430 A.2d 647, 649 (1981). (Emphasis in original).

There are several factors that contribute to this conclusion. "First, the changing role of the hospital in society creates a likelihood that patients will look to the institution rather than the individual physician for care." *Capan v. Devine Providence Hosp.*, 287 Pa.Super. at 368, 430 A.2d at 649. (Citations omitted). In today's world, a patient frequently goes to the hospital seeking a wide range of services rather than personal treatment by a particular physician. "The second factor

ing the operation, he suffered several side effects from the anesthesia. Consequently, he

sued both the anesthesiologist and the hospital.

justifying a finding of 'ostensible agency' relationship between hospital and physician exists where the hospital 'holds out' the physician as its employee." *Capan v. Devine Providence Hosp.*, 287 Pa.Super. at 369, 430 A.2d at 649. (Citations omitted; footnote omitted). A "holding out" occurs "when the hospital acts or omits to act in some way which leads the patient to a reasonable belief he is being treated by the hospital or one of its employees." *Adamski v. Tacoma Gen. Hosp.*, 20 Wash.App. at 115, 579 P.2d at 979. (Citations omitted).

We find the application of ostensible agency particularly compelling when a patient seeks services from an emergency room. In such circumstances, there is often no time to arrange for the services of a private physician, and, in effect, the patient has no other choice but the emergency room. Frequently, the situation is tense, with the patient's family and friends in an emotional state. To hold that the hospital, after offering emergency services, should avoid any subsequent liability by claiming that those who render such assistance are not the hospital's employees defies the logical and reasonable expectations of those who seek such services.

We recognized the doctrine of apparent or ostensible authority in Syllabus Point 1 of *General Electric Credit Corp. v. Fields*, 148 W.Va. 176, 133 S.E.2d 780 (1963):

> "One who by his acts or conduct has permitted another to act apparently or ostensibly as his agent, to the injury of a third person who has dealt with the apparent or ostensible agent in good faith and in the exercise of reasonable prudence, is estopped to deny the agency relationship."

*See also Thompson v. Stuckey*, 171 W.Va. 483, 300 S.E.2d 295 (1983).

Therefore, we hold that where a hospital makes emergency room treatment available to serve the public as an integral part of its facilities, the hospital is estopped to deny that the physicians and other medical personnel on duty providing treatment are its agents. Regardless of any contractual arrangements with so-called independent contractors, the hospital is liable to the injured patient for acts of malpractice committed in its emergency room, so long as the requisite proximate cause and damages are present.

■ Dr. Kusminsky was an ostensible agent of CAMC under the circumstances of this case. Ms. Torrence went to the emergency room at CAMC because she was seeking the services of that institution rather than a particular doctor. After she arrived, because she did not have her own surgeon, she was assigned as a surgical service patient. As this type of patient, Ms. Torrence received her initial care from two residents who were undeniably agents of the hospital. When the two residents felt that Ms. Torrence needed an operation, they called their supervisor, Dr. Kusminsky, the physician who was on-call for the emergency room that particular evening. Had Ms. Torrence come to the hospital some other night, she might have been operated on by a different surgeon. Moreover, Dr. Kusminsky used the staff, facilities, and supplies of CAMC during the surgical procedure. Finally, there is no evidence in the record that CAMC did anything that would lead Ms. Torrence to believe that Dr. Kusminsky was an independent contractor and not an employee of the hospital.

Thus, we find that the trial court did not err when it refused CAMC's Instruction No. 9.[12] This instruction was erroneous on

---

12. CAMC's Instruction No. 9 read:

"The Court instructs the jury that Charleston Area Medical Center is not responsible for the acts of any attending physician, including Dr. Kusminsky. Even though Dr. Kusminsky treats patients at Charleston Area Medical Center, he is an independent contractor and alone is responsible for the exercise of his professional skill and judgment. The exercise of Dr. Kusminsky's professional skill and judgment is not subject to control by Charleston Area Medical Center.

"Therefore, even if you find by a preponderance of the evidence that Dr. Kusminsky was negligent in the treatment of the plaintiff, you may not find Charleston Area Medical Center liable for such negligence even though you also believe such negligence took place in the hospital. *Stuart Circle Hospital [Corp.] v. Cur-*

several grounds. First, it assumed as a matter of law that Dr. Kusminsky was an independent contractor. Second, the instruction did not explain that CAMC could be found liable under an ostensible agency theory.

### B.

Several other instructional errors raised by CAMC may be disposed of with less discussion. CAMC contends that the trial court erred in giving Plaintiff's Instruction No. 18, which involved the administration of the drug Compazine.[13] CAMC argues that this instruction states that giving Ms. Torrence Compazine in any amount on any occasion was a deviation from accepted medical standards. Because Compazine is the appropriate medication to relieve nausea, CAMC argues that the instruction is incorrect.

■ We do not read this instruction as broadly as does CAMC. The hospital admits that Mary Torrence received an excessive dose of Compazine during her second hospital stay. Plaintiff's Instruction No. 18 merely states what the parties have conceded, "that the administration of Compazine to the plaintiff, Mary E. Torrence, *under the conditions and circumstances as described in the evidence* is a deviation from accepted medical standards." (Emphasis added.) Accordingly, we find this assignment of error without merit.

■ CAMC further argues that the trial court erred in giving Plaintiff's Instruction No. 12.[14] Because we find Dr. Kusminsky was an ostensible agent of CAMC, we conclude that the trial court did not err in giving Plaintiff's Instruction No. 12.

### C.

■ Another error assigned by CAMC is that the trial court improperly commented on the credibility of a witness by stating that defense counsel could "rehabilitate" Dr. Kusminsky. This comment was made during the plaintiff's cross-examination of Dr. Kusminsky when defense counsel was objecting to some of the questions and inferences sought by the plaintiff. In an attempt to bring some order to the proceedings, the court reminded counsel that he would "have an opportunity to redirect or rehabilitate" the doctor. We do not believe this wording created any jury prejudice.

■ CAMC also claims that the trial court erred in not dismissing the two named interns. CAMC moved for a directed verdict for them at the conclusion of the plaintiff's case, but the court reserved ruling on it. Subsequently, the case was submitted to the jury without including them in the verdict form. Consequently, while no formal ruling was made, CAMC obtained the desired result. We find no error on this claim.

■ CAMC assigns as error the striking of two jurors for cause, one a dentist and the other a clerk for an insurance agency. Moreover, CAMC argues that the trial court erred in allowing the plaintiff to ask prospective jurors during voir dire whether any of them was a claims adjuster, an accident investigator, or was related to one.

■ In Syllabus Point 1, in part, of *Ritz v. Kingdon,* 139 W.Va. 189, 79 S.E.2d 123 (1953), *overruled on other grounds, State*

*ry,* 173 Va. 136, 3 S.E.2d 153 (1934); *Cross v. Trapp,* 170 W.Va. 459, 294 S.E.2d 446."

13. Plaintiff's Instruction No. 18 read:

"The Court instructs the jury that the administration of Compazine to the plaintiff, Mary E. Torrence, under the conditions and circumstances as described in the evidence is a deviation from accepted medical standards. Damages may be awarded for physical pain, mental anguish, and discomfort suffered by her as a result of the administration of Compazine."

14. Plaintiff's Instruction No. 12 read:

"The law holds an employer responsible for the acts of his employees while acting in the course of their employment. Thus, any negligent acts committed by *physicians or residents* may render the hospital responsible for any damages suffered. If you find by a preponderance of the evidence that *any physicians or agents* of the Charleston Area Medical Center committed any negligent acts in connection with the care and treatment of plaintiff, Mary E. Torrence, then you may find against the Charleston Area Medical Center." (Emphasis added.)

*v. Bragg,* 140 W.Va. 585, 87 S.E.2d 689 (1955), we indicated that "[i]n the selection of a jury in . . . a civil action a trial court is vested with a sound discretion." We also pointed out in Syllabus Point 2:

"The exclusion of a juror for insufficient cause is not reversible error if the twelve jurors who are finally chosen to try the case are legally qualified."

*See Davis v. Wang,* 184 W.Va. 222, 225 n. 5, 400 S.E.2d 230, 233 n. 5 (1990).

▮ Regarding the propriety of the voir dire questions, we advert to our traditional rule contained in Syllabus Point 1 of *McCroskey v. Proctor,* 175 W.Va. 345, 332 S.E.2d 646 (1985):

" ' "Jurors may be questioned on their *voir dire* not only for the purpose of showing cause for a challenge, but also, within reasonable limits, to elicit such facts as enable the parties to exercise intelligently their right of peremptory challenge. The nature and extent of the examination, however, should be left largely to the discretion of the trial court." *State v. Stonestreet,* Point 1 Syllabus, 112 W.Va. 668 [166 S.E. 378 (1932)].' Syl. pt. 4, *Henthorn v. Long,* 146 W.Va. 636, 122 S.E.2d 186 (1961)."

### D.

▮ Both CAMC and Dr. Kusminsky assert that the trial court improperly admitted hearsay evidence when it allowed Ms. Torrence's mother, Lou Torrence, to testify about a conversation she had with a nurse on duty at the hospital the night her daughter went to the emergency room. During trial, Lou Torrence testified as follows:

"[LOU TORRENCE]: Okay, she went out in the hall with me, and she made this statement. 'I could be fired for what I'm about to tell you. I'm getting tired of covering up other peoples mistakes. Do get help, get a doctor.' I said, 'Would you call my doctor?' She said, 'Who is your doctor?' I said, 'Dr. Pfister.' She said, 'Dr. Pfister's name is not on your record.' It was the first time that I was aware that Dr. Pfister's

name was not on Mary's medical record at that time. I said, 'Well, who is on her record?' . . . And she left me and returned later. She went to the nurses station. I didn't hear the call, but I trust she made the call. She came back and said, 'Dr. Kusminsky does not know that Mary is in the hospital.' "

Rule 801(c) of the West Virginia Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(d)(2)(D) qualifies the general rule and holds: "A statement is not hearsay if—. . . (2) . . . [t]he statement is offered against a party and is . . . (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship[.]"

▮ In *Canterbury v. West Virginia Human Rights Commission,* 181 W.Va. 285, 382 S.E.2d 338 (1989), we discussed this rule. *Canterbury* involved a black restaurant employee who claimed that he had been fired for racial reasons. A day manager of the restaurant told the employee that the owner did not like interracial marriages. The employee asserted that he was fired because the owner found out he was married to a white woman. We found that this statement was properly admitted and explained in Syllabus Point 3 of *Canterbury:*

"A statement is not hearsay if the statement is offered against a party and is a statement by his [or her] agent or servant concerning a matter within the scope of his [or her] agency or employment, made during the existence of the relationship. *W. Va.R.Evid.* 801(d)(2)(D)."

Lou Torrence testified about a statement made by a nurse who was an employee of CAMC, a party in this action. The nurse was on duty the night Mary Torrence went to the hospital and was apparently providing her nursing services. The statement concerned the quality of medical care Mary Torrence was receiving. We cannot fathom a situation which falls more squarely

within the scope of Rule 801(d)(2)(D). *See also Board of Educ. v. Zando, Martin & Milstead, Inc.*, 182 W.Va. 597, 390 S.E.2d 796 (1990).

### E.

For the foregoing reasons, we affirm the judgment as to CAMC.

### III.

### A.

■ Aside from the alleged erroneous admission of the nurse's statement, which we discussed in the preceding section, Dr. Kusminsky asserts that the trial court committed reversible error when it refused to submit his special interrogatories to the jury.[15] We disagree.

First, as we have earlier discussed in the CAMC portions, the trial court correctly decided that because there was insufficient evidence that the interns were negligent, their liability would not be included in the verdict. The verdict form given to the jury did encompass the requirement that the jury find whether each of the other parties, i.e., Ms. Torrence, Dr. Kusminsky, and CAMC, were guilty of negligence and the percentage of such negligence. The jury found no negligence as to the plaintiff, 60 percent negligence by CAMC, and 40 percent by Dr. Kusminsky.

Moreover, Rule 49(b) of the West Virginia Rules of Civil Procedure outlines the steps which should be followed when one of the parties wishes to submit special interrogatories. This provision states, in part, "[t]he court *may* submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict." (Emphasis added.)

■ As is evident by the use of the permissive word may in the rule, whether to give special interrogatories to the jury is within the trial court's discretion. In Syllabus Point 15 of *Carper v. Kanawha Banking & Trust Co.*, 157 W.Va. 477, 207 S.E.2d 897 (1974), we acknowledged this discretion:

"In absence of statutory requirement, whether a jury shall be compelled to answer special interrogatories before arriving at a general verdict, is a matter resting in the sound discretion of the trial court."

Moreover, we explicitly cautioned trial courts on the use of special interrogatories in Syllabus Point 16 of *Carper:*

"Where not required by statute, special interrogatories in aid of a general verdict should be used cautiously and only to clarify rather than to obfuscate the issues involved."

*See also Smith v. Perry*, 178 W.Va. 395, 359 S.E.2d 624 (1987).

The verdict form used by the court covered the allocation of negligence between the parties. It dealt with substantially all of

---

**15.** The doctor's special interrogatories provide, in pertinent part:

"1. Do you find that the defendant Roberto E. Kusminsky was guilty of any negligence that proximately contributed to the alleged damages and injuries of the plaintiff Mary E. Torrence?
"Answer: _____ (Yes or No)
"2. Do you find that the defendant Charleston Area Medical Center was guilty of any negligence that proximately contributed to the alleged damages and injuries of the plaintiff Mary E. Torrence?
"Answer: _____ (Yes or No)
"3. Do you find that the defendant David Maxwell Gray was guilty of any negligence that proximately contributed to the alleged damages and injuries of the plaintiff Mary E. Torrence?
"Answer: _____ (Yes or No)

"4. Do you find that the defendant Jean A. Bjorling was guilty of any negligence that proximately contributed to the alleged damages and injuries of the plaintiff Mary E. Torrence?
"Answer: _____ (Yes or No)
\* \* \* \* \* \*
"6. If you have answered "Yes" to any of the above questions, then answer this question: Using 100% to represent the total negligence of the parties you have found responsible, apportion the negligence among them:

Defendant Roberto E. Kusminsky ___%
Defendant Charleston Area Medical Center ___%
Defendant David Maxwell Gray ___%
Defendant Jean A. Bjorling ___%

\* \* \*
Total: ___%"

the items contained in Dr. Kusminsky's special interrogatory. We find no abuse of discretion on this point.

### B.

■ Dr. Kusminsky also claims instructional error. We have addressed in Part II(B), *supra,* the plaintiff's Compazine instruction and found it to be valid. Defendant Kusminsky states that the trial court erred in refusing his Instruction No. 32. Instruction No. 32 instructed the jury that it could not award any damages for the plaintiff's endometriosis. The plaintiff did not claim damages for this condition. The medical evidence was uncontradicted that endometriosis had nothing to do with the malpractice claim or resulting damages. The court's rejection of an instruction on this non-issue was proper.

He also asserts that the trial court erred in reading Plaintiff's Instruction No. 12. This instruction outlined the various theories of negligence and was a proper instruction. There was evidence to support these claims.

### C.

■ We also find without merit Dr. Kusminsky's contention that the plaintiff's expert failed to testify to a reasonable degree of medical certainty. The plaintiff's expert was Dr. Delphine Bartosik, a Board-certified gynecological teaching expert. She fully explained the appropriate standard of care and how Dr. Kusminsky deviated from this norm. Indicative of her testimony is the following excerpt:

"THE WITNESS:

"I think that whereas it's true that obstruction of the bowel can occur after any abdominal surgical procedure, I also think that it's very, very, very likely that the reason that this patient had the abdominal—the small bowel obstruction was because her primary disease was not recognized.

"It was not treated and that's why she subsequently developed, during the ten/twelve days, dense adhesions, which caused the bowel obstruction.

"Those dense adhesions, again, I would say, I believe, are because they didn't wash out the endometrioma fluid.

"BY MS. BAITTY:

"Q: That opinion of yours to a reasonable degree of medical certainty?

"A: That opinion is to a reasonable degree of medical certainty."

In Syllabus Point 4 of *Hundley v. Martinez,* 151 W.Va. 977, 158 S.E.2d 159 (1967), we held:

"In an action for damages against a physician for negligence or want of skill in the treatment of an injury or disease, the burden is on the plaintiff to prove such negligence or want of skill and that it resulted in injury to the plaintiff."

*See also Totten v. Adongay,* 175 W.Va. 634, 337 S.E.2d 2 (1985). In essence, "[t]he requisite expert medical testimony, then, is intended to assist the lay jury in determining whether the injuries incurred by the plaintiff were indeed the result of a breach of the duty of care or lack of requisite skill by the defendant-physician." *Totten v. Adongay,* 175 W.Va. at 638, 337 S.E.2d at 6; *Hinkle v. Martin,* 163 W.Va. 482, 256 S.E.2d 768 (1979); *Hundley v. Martinez, supra; Roberts v. Gale,* 149 W.Va. 166, 139 S.E.2d 272 (1964).

We conclude that the plaintiff presented adequate expert testimony that Dr. Kusminsky was negligent. Thus, she has met her burden of proof.

### D.

■ Dr. Kusminsky also contends that the trial court erred in refusing to set aside the jury verdict as excessive. In Syllabus Point 5 of *Roberts v. Stevens Clinic Hospital, Inc.,* 176 W.Va. 492, 345 S.E.2d 791 (1986), we stated the standard courts should use before setting aside a jury verdict as excessive:

" 'Courts must not set aside jury verdicts as excessive unless they are monstrous, enormous, at first blush beyond all measure, unreasonable, outrageous, and manifestly show jury passion, partiality, prejudice or corruption.' Syl.Pt.,

*Addair v. Majestic Petroleum Co., Inc.,* 160 W.Va. 105, 232 S.E.2d 821 (1977)."

*See also Jones v. Credit Bureau of Huntington, Inc.,* 184 W.Va. 112, 399 S.E.2d 694 (1990).

We find no evidence that the verdict in this case meets the test of excessiveness. The jury awarded Ms. Torrence $207,000.00. At trial, Ms. Torrence demonstrated that she sustained approximately $8,000.00 in additional medical bills, that she suffered permanent scarring, and that her bowel had to be resected. In light of the additional expense, pain and suffering, and permanent disfigurement that Ms. Torrence sustained, we find that the trial court did not err in refusing to set aside the jury verdict.[16]

### E.

Miscellaneous errors assigned by Dr. Kusminsky begin with his complaint that the trial court permitted a brief portion of the deposition of Dr. Carey, an expert witness for the defense, to be used during plaintiff's rebuttal. Dr. Carey testified at trial and was asked on cross-examination about his fee, which he stated was $150 an hour. In an earlier deposition, he had given his hourly charge at $250. At trial, the parties vigorously argued whether it was proper to use the deposition for this purpose during plaintiff's rebuttal. We decline to address this issue. Even if the evidence was improperly admitted, it was so immaterial to any crucial issue on the case that it is deemed harmless. As we stated in Syllabus Point 7 of *Starcher v. South Penn Oil Co.,* 81 W.Va. 587, 95 S.E. 28 (1918):

"A judgment will not be reversed because of the admission of improper or irrelevant evidence when it is clear that the verdict of the jury could not have been affected thereby."

Dr. Kusminsky complains that plaintiff's counsel failed to follow the judge's rulings made prior to closing arguments that counsel should not state his conclusion as to whether Dr. Kusminsky was present during the operation. We have carefully reviewed the closing argument and do not find that counsel violated this ruling. It is true that part of his argument did mention, as borne out in the evidence, that Dr. Kusminsky did not give any follow-up care to the plaintiff or talk to her parents, who were at the hospital during and after the operation.

We addressed in Part II(C), *supra*, the question of whether the judge's use of the term "rehabilitate" created a prejudicial effect on the jury. We found it did not.

Further error is asserted that the court precluded Dr. Kusminsky's attorney from allowing his medical expert to state that a passage from a medical text favored his medical position. It appears from the record that counsel was able to elicit this information.[17] Moreover, defense counsel failed to preserve this alleged error by vouching in the record the portion of the textbook that he desired to place into evidence. Our rule on this point is set out in Syllabus Point 1 of *Horton v. Horton,* 164 W.Va. 358, 264 S.E.2d 160 (1980):

"If a party offers evidence to which an objection is sustained, that party, in order to preserve the rejection of the evidence as error on appeal, must place the rejected evidence on the record or disclose what the evidence would have shown, and the failure to do so prevents

---

16. Dr. Kusminsky's assertion that the trial judge should have recused himself is also meritless. This claim was not raised before or at trial. This type of motion is covered in Rule XVII of the Trial Court Rules. The failure to properly invoke the rule forecloses our consideration of this matter on appeal.

17. The record states:
"Q. Dr. Patchell, is your testimony concerning your review of the slide and your feeling that glands and stroma need to be present to make a diagnosis of endometriosis supported by the literature?
"A. That is absolutely in all the literature that I've ever read or anything that I've ever heard, that you have to have endometrial light tissue in order to make a diagnosis.
"Q. Is that supported by Benson's textbook?
"A. I would suspect that it is."

an appellate court from reviewing the matter on appeal."

Finally, Dr. Kusminsky claims that the court erred in failing to strike portions of an answer given by the plaintiff's expert, Dr. Bartosik. This incident occurred at a video evidentiary deposition where the doctor was asked on cross-examination whether the plaintiff had any permanent injuries. The doctor responded that she believed the plaintiff had abdominal peritoneal adhesions. She then added, "I don't know that this gal has ever tried to get pregnant yet. But, that's going to be a separate but additional problem." Our general rule with regard to answers received on cross-examination is stated in Syllabus Point 13 of *Browning v. Hoffman*, 90 W.Va. 568, 111 S.E. 492 (1922):

"A party cannot complain of admission of an answer responsive to a question propounded to a witness, by himself, on cross-examination."

We find no error on this claim.

## F.

For the foregoing reasons, we affirm the judgment against Dr. Kusminsky.

## IV.

For all of the foregoing reasons, we affirm the judgment of the Circuit Court of Kanawha County against the Charleston Area Medical Center and against Roberto E. Kusminsky, M.D.

Affirmed.