# CHARLESTON.

HARPER v. BUILDING ASSOCIATION.

Submitted September 10, 1903.    Decided February 23, 1904.

1. USURY.

The defense of ursury is personal to the debtor and, while he lives, no other person can interpose it except with his consent and concurrence.   (p. 152).

2. USURY—*Defendant.*

A purchaser of real estate charged with an usurious debt cannot defend against the usury, unless the debtor unites with him in the defense, or his acquiescence in, and consent to, such defense appears in the record.   (p. 154).

3. USURY—*Contract.*

The common law right of action for the recovery of usurious interest paid in violation of a statute declaring a contract for the payment of such interest void, has not been repealed in this State and such recovery may be had after the debt and all usurious interest thereon has been fully paid.   (p. 156).

4. STATUTE—*Repeal.*

When a statute that is declaratory of the common law is repealed, the common law is not thereby repealed, and it remains in force.   (p. 156).

5. STATUTES.

Such parts of the common law are not displaced by existing statutes, and have not been expressly repealed, are still in effect.   (p. 157).

6. USURY—*Action—Debtor.*

As nothing in the statutes of this State relating to the subjects of interest and usury forbids an action by the debtor, after having fully paid his usurious debt, to recover back the unlawful interest so paid, the common law right of action therefor still exists.   (p. 157).

7. BUILDING AND LOAN ASSOCIATION—*Usury.*

A building and loan association contract requiring the payment of a fixed monthly premium on the loan for an indefinite period of time is usurious.   (p. 157).

8. USURY.

Where, under such a contract, after applying all sums paid by the borrower as partial payments on the debt and al-

55   149
58   583

55   149
59   655
59   656
60   421

55    149
f61    76

55    149
63    357

lowing interest on the principal sum at the legal rate, it appears that more than the full amount of the debt with legal interest has been paid, there may be a decree for the excess, if ground therefor has been laid in the pleadings in the cause. (p. 159).

Appeal from Circuit Court, Tucker County.

Bill by Riley Harper against the Middle States Loan, Building & Construction Company. Decree for plaintiff, and defendant appeals.

*Affirmed.*

C. O. STRIEBY, for appellant.

WAGNER & HEIRONIMUS and W. G. CONLEY, for appellee.

POFFENBARGER, PRESIDENT:

In February, 1894, Mary A. Lawrence borrowed, from the Middle States Loan, Building and Construction Company, of Hagerstown, Maryland, five hundred dollars on stock subscribed for by her in said company in December, 1892, and, as security for said loan, gave a deed of trust upon a certain lot in the town of Davis. In September, 1895, she conveyed this lot to Sallie E. Harper, by deed with special warranty, in which deed the consideration for the conveyance and contract of purchase are stated as follows: "One Thousand Dollars, ($1,000.00) to be paid as follows, to-wit: The party of the second part is to pay to The Middle-States Loan, Building & Construction Co. of Hagerstown, Md., the sum of about Five Hundred Dollars, or the balance due said Company and said party of the second part is to deliver to party of the first part her note which party of the second part now holds of Three Hundred & Forty-eight Dollars now amounting to $389.00 and the residue $211.00 cash in hand paid, the receipt whereof is hereby acknowledged." In November, 1900, Sallie E. Harper and her husband conveyed the property by deed with special warranty, in consideration of the sum of one thousand dollars, to Riley Harper.

The dues, interest and premium seem to have been paid by Mrs. Lawrence and Mrs. Harper until sometime early in the year 1900, and then Riley Harper, assuming that the contract with the building association is usurious, because made in vio-

lation of the statutes of this State, governing building and loan association's, and that the settlement ought to be upon the basis of an ordinary loan, treating the payments of dues, interest and premium as partial payments on the debt, refused to make further payments, claimed that the loan had been more than repaid, brought a suit in equity to enforce a settlement and recover the amount overpaid, and sued out an attachment against the building association. Thereupon the building association advertised the property for sale under the deed of trust, and Harper brought another suit, supplemental in its nature, to enjoin the sale. An injunction was awarded on the 27th day of April, 1901, and, at the June term, following, the building association appeared and demurred to the bill and moved to quash the attachment. The motion was sustained, the demurrer was overruled, the building association filed its answer, and the cause was referred to a commissioner to take, state and report an account, showing the amount due, upon the theory of the validity of the contract, and also the amount due, assuming the contract to be usurious. Upon the return of the report, showing that, treating the contract as usurious and expunging the usury, there was due the plaintiff the sum of one hundred and nine dollars and fifty-eight cents, as having been overpaid, the court overruled the exception of the building association to the report of the commissioner in respect to this finding, and entered a decree against said association for said sum and ordered it to execute a release of the deed of trust. From this decree an appeal has been taken.

As the bill alleged that Sallie E. Harper, to whom the lot had been conveyed by Mrs. Lawrence, "assumed the balance due said defendant Loan, Building and Construction Company on said loan of $500.00, as part of the consideration therefor," and exhibited the deed by which said conveyance was made, which fully sustained this allegation, the demurrer should have been sustained, the injunction dissolved and the bill dismissed, if nothing further appeared in the record. While there is some conflict in the authorities as to whether usury may be set up by the purchaser of property upon which an usurious debt is secured, it is everywhere held that one who, in purchasing the property charged with such debt, assumes the payment of the debt,—cannot make the defense of usury, and of course a person

claiming under him is in no better condition. *Smith* v. *McMillan,* 46 W. Va. 577; *Shufelt* v. *Shufelt,* 9 Paige 137; *Post* v. *Dart,* 8 Paige 639; *Sands* v. *Church,* 6 N. Y. 347; *Morris* v. *Floyd,* 5 Barb. 130; *Snyder* v. *Construction Co.,* 52 W. Va. 655; *Bank* v. *Warehouse Co.,* 49 N. Y. 642.

In many states, as shown by authorities cited in *Lee* v. *Feamster,* 21 W. Va. 108, and *Synder* v. *Construction Co.,* 52 W. Va. 655, one who purchases property charged with an usurious debt, without assuming the payment of the debt, or acquires a lien upon the property so charged, may resist the usury therein. But the law in this State is to the contrary. *Lee* v. *Feamster* expressly so holds. Point 2 of the syllabus reads as follows: "Where a creditor is secured by a second deed of trust on the same property, he has but the equity of redemption and cannot plead usury against a creditor secured under the first trust deed." Holding the equity of redemption, a second trust deed creditor stands in the shoes of the debtor as to the prior lien. He can pay it off in order to make his own debt good. The equity of redemption is pledged to the payment of the second debt. The subsequent creditor takes under his deed of trust all the beneficial interest of the grantor as security for his debt. But he is not allowed to plead usury in the prior debt, for the reason that the plea of usury is held by this Court to be a personal privilege of the debtor, which no other person can assert while he lives. Hence, if it could be said that Mrs. Harper took the property, subject to the building association debt, and did not assume the payment thereof, she could not resist payment of that debt on the ground of usury. "The great weight of authority conclusively shows, that the policy of the Legislature in adopting statutes of usury was the protection of borrowers, against the oppressive exactions of lenders; and it does not tend to the promotion of that policy, that other persons than the victims of the usury, or persons standing in legal privity with them, should have the benefit of such statutes; and therefore it has been the general current of decisions, that the plea of usury is a defense personal to the borrower, and a stranger cannot avail himself of it." JOHNSON, JUDGE, in *Lee* v. *Feamster.*

The reference in the foregoing quotation to "persons standing in legal privity with" the victims of the usury, does not relate

to persons succeeding to the property by purchase. This is made clear by what is said in a preceding part of the opinion, where the plea of usury is compared with, and treated as analogous to, the plea of the statute of limitations, which cannot be set up by any person other than the debtor while he lives, but may be set up, after his death, by his personal representative. Persons standing in legal privity, therefore, are persons who succeed to the rights of the debtor by virtue of law, and not by contract. The definitions and classifications of privies show a distinction between succession by contract and succession by law, and the use of the word "legal" clearly indicates that the latter kind of succession is referred to in the above quotation. 23 Am. & Eng. Enc. Law, (2d Ed.) 101; *Stacy* v. *Thrasher,* 6 How. (U. S.) 44, 59. Where a person takes a second deed of trust on property, there is privity by contract between him and the debtor, but not privity by virtue of law by descent. *Lee* v. *Feamster* expressly decides that such privity by contract does not give the right to plead usury. That decision is based upon the Virginia decisions. *Spengler* v. *Snapp,* 5 Leigh 478; *Crenshaw* v. *Clark,* 5 Leigh 68. It is approved and followed in *Smith* v. *McMillan,* 46 W. Va. 577. There is an expression of opinion, but not a decision, to the contrary in *Snyder* v. *Construction Co.,* 52 W. Va. 655, the result of a misinterpretation of *Lee* v. *Feamster.* The point did not necessarily arise in that case and the decision turned wholly upon other grounds. Hence, the expression of opinion is *obiter,* but it is here disapproved lest it might mislead.

In 27 Am. & Eng. Enc. Law, 952, what purports to be the rule supported by the weight of authority is stated as follows: "The grantee of the mortgagor's equity of redemption merely, pays therefor only what the equity is supposed to be worth, on the basis that the mortgage is valid; and if he were to be allowed to defeat it for usury between the mortgagor and mortgagee, he would thereby acquire a much more valuable estate than he bargained for. The rule, accordingly, is that such purchaser must abide by his contract, and submit to the enforcement of the mortgage. This rule applies with additional force, in cases where the purchaser takes his deed expressly subject to the mortgage, and deducts the amount thereof from the agreed purchase price. It also applies, with even greater force, in cases

where the deed contains an 'assumption clause,' whereby the purchaser covenants and agrees to pay the mortgage, as a part of the purchase price."

But the general rule, prohibiting a stranger to the usurious contract from availing himself of the defense of usury, is subject to the qualification that he may plead it for the benefit of the original debtor, or, perhaps, with his consent. *Burden* v. *Sedgewick,* 44 N. Y. 626; *Stayton* v. *Riddle,* 114 Pa. St. 464. The reason generally given for holding the plea of usury to be a personal right of the debtor, is that he may prefer not to set it up, because of a desire to avoid litigation, or of his pride of character, or of his conscientious sense of justice. Tyler, U. S. 403. Of course, this reason fails when the debtor gives his consent, and the rule goes down with it. Thus, in Nebraska, where the defense is held to be strictly personal to the debtor, a purchaser of an equity of redemption was allowed the benefit of it in a suit to foreclose a mortgage, in which the mortgagor was made a defendant and set up the charge of usury in the debt. *Male* v. *Wink,* 61 Neb. 748. A similar case is that of *Faison* v. *Grandy,* 128 N. C. 438. This decision also is by a court which rigidly restricts the defense to the debtor. In *Building Association* v. *Walker,* 59 Neb. 456, and *Building Association* v. *Bilan, Id.* 458, and *Building Association* v. *Sellers,* 19 Tex. Civ. App. 201, the same proposition is substantially asserted and applied.

Here Mrs. Lawrence, the original debtor, as well as Mrs. Harper, filed a separate answer which, to say the least, gives consent to the claim of the plaintiff. At the hearing, they filed a joint and separate answer in the nature of an amended and supplemental answer, averring an assignment of the usury in the debt to the plaintiff and praying that it be expunged from the debt and decreed to him. This, under the principles above referred to, undoubtedly gave him the right to have the usury eliminated from the debt. By this, Mrs. Lawrence, the original debtor was benefitted, for in the event of a deficiency, she would have been liable to the building association for the balance due. *Male* v. *Wink,* 61 Neb. 748.

The plaintiff had a clear right to an adjudication that the debt was fully paid and to a release of the deed of trust. In addition to this, the court gave him a decree for the excess as

usurious interest paid.  In *Moore* v. *Johnson,* 34 W. Va. 672, this Court divided equally on the question whether, after an usurious debt has been fully paid, the excess paid above the principal sum and legal interest thereon can be recovered.  That is the only case in which the question has been presented to this Court since the Code of 1868, which contained substantially the present statute governing interest and usury, went into effect. In *Davis* v. *Demming,* 12 W. Va. 246, it was expressly decided that usurious interest paid could be recovered in a court of equity and that the measure of relief in such case was the excess paid above the principal and legal interest, with interest on such excess from the time of its payment.  The usurious interest sued for in that case, however, was paid when the statute as found in the Code of 1860 was in force, the eighth section of which expressly provided that such interest might be recovered in a suit brought within one year from the date of the payment thereof.  Radical changes were made in the statute by the revision of 1868.  Prior thereto, usury in a contract forfeited both principal and interest.  If the defendant sustained his plea of usury, the plaintiff recovered nothing.  If a borrower exhibited a bill in equity against the lender to purge the debt of · usury, the lender was permitted to recover only his principal without interest and was compelled to pay the cost of the suit. Under the Code of 1868 and the present statute, the defendant, in an action at law, can only have relief from the excess above the principal and legal interest and the right to credit as payments on the debt any sums paid by him as usurious interest. If a borrower exhibits his bill against the lender for the purpose of expunging the usury, the lender is permitted to recover the principal and legal interest but not costs.  Section 8 of chapter 141 of the Code of 1860, giving a right of action for the recovery of usury paid within one year was omitted from the Code of 1868.  The present statute, instead of declaring all contracts for the loan or forbearance of money or other thing at a greater rate than six per cent. shall be void, as did section 5 of chapter 141 of the Code of 1860, says they shall be void as to any excess of interest agreed to be paid above that rate and no further. Whether the legislature, in relieving the money lender from the harshness of the former law, and omitting the section giving the right to recover back usurious interest paid, after final settle-

ment and payment of the debt, intended that thereafter there should be no such recovery and, if so, whether, construing the statute according to the rules laid down by the courts, it expressed and recorded that intention, are the questions presented. The only plausible argument seems to be that the statutory provisions on the subjects of interest and usury in the Code of 1860, constituted all the substantive law on those subjects and were intended to cover them fully, displacing the common law and all prior statutes, and that the cutting out of section 8, giving the right of recovery, and amending other sections, was but a revision of the statutory provisions covering the subjects, which negatived any intent to revive the common law right of action for the recovery of usury.    But the court of appeals of Virginia, in *Moseley* v. *Brown*, 76 Va. 419, passing upon almost the exact question, held the contrary.    Burkes, Judge, speaking for the court, said: "The same act (1874) repeals section 10, chapter 137, Code of 1873.    That section (10) gave to the person paying, the right to recover the excess beyond lawful interest paid in any case.    It is argued from the repeal of this section and the altered phraseology of section 5, that the intention of the legislature was to take away all remedy for the restitution of usurious interest after payment.    We do not think this is a just inference.    In 1849, when the section had its origin, the borrower, as before stated, had his remedy at common law, and the object of the statute, as it seems to us, was to limit the enforcement of the remedy to one year, and also allow a recovery against the party with whom the contract was made, or to whom the assurance was given, although the payment of the usurious excess had been made to his endorsee or assignee.    See note—Report of Revisors, 714.    The effect, therefore, of the repeal of the section was to completely restore the common law remedy, as between the borrower and lender, unless the inference of the intent thus to restore is repelled by the change in the language in section 5."

The section repealed was declaratory of the common law. Where a statute repeals the common law and is then itself repealed, the common law is revived, and the authorities say that if a statute that is declaratory of the common law is repealed, the common law more clearly remains in force for the reason that the statute is an affirmance of it. "That a common law

qualification may have once been prescribed by the statute also, which has been repealed, does not destroy the common law qualifications. Such a statute would be only in affirmance of the common law. But if it were repugnant thereto, the repeal of it would of course restore the common law." Moncure, Judge, in *Booth* v. *Commonwealth,* 16 Grat. 519. That case further decides that the Virginia statute corresponding to section 10 of chapter 13 of our Code, saying that "when a law which has repealed another, is itself repealed, the former shall not be revived without express words for the purpose, applies only to the statute law and does not affect the common law. On the subject of revival of common law, see also *Insurance Co.* v. *Barley,* 16 Grat. 363; *Nickol* v. *Cain,* 82 Va. 312; *Rose* v. *Brown,* 11 W. Va. 122, 142. *State* v. *Mines,* 38 W. Va. 125, holding that section 10 of chapter 13 of the Code does not apply to a statute repealing the common law, but only to a statute repealing statutes.

Where the common law on a given subject has not been expressly repealed nor displaced or altered by any statute it remains in force. *Mathewson* v. *Phoenix Iron Foundry,* 20 Fed. Rep. 281, and authorities above cited. Nothing in our statute laws negatives the common law right of action to recover back unlawful interest paid. Hence, it clearly exists.

"That there is a right of action by the common law, for usury paid, admits of no doubt. It has long been considered in law, that in usurious transactions the borrower acts somewhat under duress; that he is not altogether a free agent in the business; in the language of some of the books, that he is the slave of the lender. We quote from the opinion of Judge Strong, in *Philanthropic Building Association* v. *McKnight,* 35 Penn. St. 472: That the payment of usurious interest is not a voluntary payment in any such sense as to entitle the receiver to retain the sum paid above legal interest, is too well settled to admit of doubt. The money is paid under the constraint of a formal though illegal contract. That contract itself was obtained by oppression, by taking advantage of the necessities of the borrower, and, of consequence, so was the usurious interest paid under it. The early disposition of the English courts was to deny the right of a party paying such interest to recover back any portion of the money paid, for the reason that both parties

were deemed to be *in pari delicto,* so that the maxim, '*volenti non fit injuria,*' would apply. 1 Salk. 22. The authority of this decision, however, was soon questioned. Lord Mansfield denied that the case had been declared a thousand times. Cowper, 199. At a late date distinction was taken between transactions under statutes enacted on grounds of general policy, where each party violating the law is held to be in equal fault, and transactions under the usury laws, enacted to protect weak and needy men from being defrauded and oppressed. To the latter the law does afford relief. It regards the lender on usury as an oppressor, and the borrower as the injured and oppressed. *Browning* v. *Morris,* Cowp. 790; *Briggs* v. *Thompson,* 20 Johnson 294; *Thomas* v. *Shoemaker,* 6 Watts & Serg. 183. And in none of the cases do we discover that any other evidence of duress or oppression has been held to be necessary than such as is involved in the act itself of taking the money under the usurious contract. The principle of the statutes of usury seems to be that the lender is the wrongdoer, and that the borrower is his victim." *Moseley* v. *Brown,* 76 Va. 419, 425.

The present Virginia statute, prescribing the rate of interest, does not make the contract void in express terms as does section 5 of chapter 96 of our Code. It says all contracts and assurances for the loan or forbearance of money or other thing at a greater rate of interest than six per cent, "shall be deemed to be for an illegal consideration as to the excess beyond the principal amount loaned or forbourne." Our statute says they "shall be void as to any excess of interest agreed to be paid above that rate and no further." Under many of the decisions, the Virginia statute would be construed as giving no right of recovery because it does not make the contract void to any extent, but only unenforceable, in consequence of which the usurer does not take that which is forbidden by law. But our statute declares the contract void as to the excess, and statutes which do that are generally construed as prohibiting the taking of the excess and thereby laying the ground for an action to recover it back. The difference seems to be material for the Revisors of 1849, in their report, recommended that the statute be made to declare that the contract, as to the excess, should be deemed to be for an illegal consideration and not void, giving their reason for it as follows: "It will be perceived that by the present

chapter we propose, in accordance with the English statute of 5 and 6 Will. IV., chapter 41, section 1, instead of making the contract void, to declare that it shall, as to the excess, be deemed to be for an illegal consideration. If an illegal contract be executed or performed, and both parties are *in pari delicto,* the general rule is that no action lies to recover back money paid under it. Chitty on Contracts 499. By the section to which this note is appended, we propose to allow a recovery back." The note was appended to a different section expressly giving a right of action for the excess, without which, in the opinion of the Revisors, no recovery could be had, if the contract, as to the excess, was one standing on an illegal consideration.

It is urged that the contract is not usurious, but that position is untenable. The deed of trust recites that the bond to secure the payment of which it was executed, is "conditioned for the payment of interest on said loan in gold at the rate of six per cent per annum, payable in equal monthly installments, in advance, on the last Saturday of each and every month hereafter; and in like manner and at like times, a certain monthly premium and certain monthly dues on certain shares of stock of said company now owned by the above bounden until said stock becomes fully paid and of the value of one hundred dollars per share as prescribed by said Articles of Association." The bond itself exhibited with the answer of the building association says the loan was made on five shares of the stock and the dues on the other five shares represent the premium, and that "the said interest, dues and premiums, amounting in the aggregate to the sum of eight and fifty one hundredths dollars, per month, which said last named sum shall be payable on the last Saturday of each and every month, until the maturity of the shares of the stock of the said company, subscribed for by said obligor, and in accordance with the by-laws of said company."

It is shown that the premium was to be paid for an indefinite period of time, and, under the principles announced in *Floyd* v. *Loan & Investment Co.,* 49 W. Va. 327; *Gray* v. *Building Association,* 48 W. Va. 164, and other recent West Virginia cases, this makes the contract usurious. It is useless to repeat the reasoning of these cases. Hence, they are merely referred to here. It is insisted, however, that the by-laws of the association

show that the premium is a fixed and definite premium, payable in installments. If the by-laws found in the record were those under which the contract was made, this position might possibly be sustained, but they are not. The secretary of the association, whose deposition was taken, admitted this on cross-examination. He stated that the by-laws had been changed by amendment October 24, 1895, and that the copy filed with the answer as an exhibit is a copy of the by-laws as they stood after this amendment was made. The loan was made on the 13th day of February, 1894, one year and eight months before the by-laws were changed so as to read as they now do in this record. As they are not the by-laws under which the loan was made, we are without evidence of the character of the by-laws under which it was made. On that question, the record is silent, and the only evidence concerning the nature of the premiums is found in the deed of trust and the contract, and the provisions respecting it found there clearly indicate that the premium was a fixed sum to be paid monthly for an indefinite period of time, namely, until the stock should mature.

For the reasons given, the decree complained of is affirmed.

*Affirmed.*