527 S.E.2d 149

**Robert L. BROWN, Administrator of the Estate of Michael Lee Brown, Plaintiff below, Appellant,**

v.

**John L. CARVILL, Defendant below, Appellee.**

No. 23941.

Supreme Court of Appeals of West Virginia.

Submitted May 13, 1998.

Decided July 16, 1998.

Sean P. McGinley, Esq., Rudolph L. DiTrapano, Esq., DiTrapano, Barrett & DiPiero, Charleston, West Virginia, Attorneys for the Appellant.

Brent K. Kesner, Esq., Tanya M. Kesner, Esq., Linda Gay, Esq., Kesner, Kesner & Bramble, Charleston, West Virginia, James A. Dodrill, Esq., Charleston, West Virginia, Attorneys for the Appellee.

STARCHER, Justice:

The appellant and plaintiff below, Robert Lee Brown, acting as the Administrator of the Estate of Michael Lee Brown, appeals from an August 20, 1996 order of the Circuit Court of Kanawha County granting summary judgment in a wrongful death action. On appeal, the appellant contends that the circuit court erred in entering summary judgment to the appellee and defendant below, John L. Carvill.

We previously addressed the circuit court's August 20, 1996 order in *Brown v. Carvill,* 498 S.E.2d 22 (W.Va.1997) and found no error by the circuit court. However, on January 13, 1998, we granted the appellant's petition for rehearing, and after further briefing and argument by the parties, we conclude that our prior opinion must be vacated.

As set forth below, we conclude that questions of material fact remain to be resolved in this case, and we hold that the judgment of the circuit court must be reversed and the case remanded for trial.

I.

*Factual Background*

On April 17, 1994, the appellant's son, 13–year–old Michael Lee Brown ("Michael"), was riding a motorcycle on a private road which ran through property owned by appellee Carvill. The appellee had strung a chain between two posts across the road. Michael struck the chain, was thrown off of his motorcycle and killed.

As a result of the accident, the appellant filed this action alleging that the appellee knew or should have known that individuals such as Michael used the road across appellee's property, and that the appellee had acted in willful, wanton and reckless disregard for the safety of those persons.

During discovery, evidence was developed showing that the appellee did not reside on the property where the chain was located, and that the chain and the posts on which it was strung had been placed across the road many years before the appellee bought the property. Although a "no trespassing" sign had been placed on a post to which the chain was attached, the sign had been torn down sometime before the accident. Also, reflectors which were on the posts had been broken or torn off. Some evidence suggested that the chain was usually put in place and kept locked except during the period around Memorial Day and Labor Day, while other evidence suggested that the chain "was down a lot."

The evidence developed by the parties was conflicting as to the appearance of the chain. Some deposition testimony indicated that the chain was painted bright orange; other testimony was that the chain was rusty and blended in with the color of the ground. Still others indicated that the chain had some orange paint on it and some rust.

On April 17, 1994, Michael desired to visit his girlfriend, Alisha Cain. To visit her Mi-

chael rode his dirt bike to the Cain house over the road which ran through the property of appellee Carvill. At that time the chain which normally blocked the road was apparently down. While at the Cain house Michael took various children who were playing there on rides on his motorcycle. During the day Michael rode back to his home to fill his gas tank and then returned to the Cain house. Each time he apparently used the road across the appellee's property.

Later in the afternoon, the appellee, who was on the property attempting to dig up a dogwood tree for a friend, saw from a distance two people on a motorcycle. He attempted to wave them down, but the riders turned and rode off without speaking to the appellee, and without the appellee being able to determine either rider's identity.

It appears that the appellee left his property sometime between 4:00 and 5:10 p.m. When the appellee left the property, he re-hung the chain across the road. Thereafter, Michael left the Cain home to return to his own home. When he did not return home, a search later that evening revealed his body and motorcycle near the chain on the Carvill property. All the evidence indicated that Michael had struck the chain and had been killed in the encounter.

After extensive discovery was conducted, the appellee moved for summary judgment. In order entered August 20, 1996, the circuit court granted the appellee's motion. In granting the motion the circuit court found that it was undisputed that Michael was a trespasser on the property of the appellee at the time of his death.

The circuit court granted summary judgment to the appellee on two grounds. First, the circuit court found that the general duty owed by the appellee as the owner of property to a trespasser such as Michael Lee Brown was to refrain from willful or wanton injury, and that there was no evidence of willful or wanton conduct on the part of the appellee. Second, the circuit court recognized that there was an exception to the general duty owed by a landowner to a trespasser where there was a dangerous instrumentality present upon the landowner's premises. The court, however, ruled that the chain on the appellee's property did not constitute such a dangerous instrumentality. Upon such findings, the court granted the motion for summary judgment and ordered that the action be dismissed with prejudice.

The appellant now appeals the circuit court's August 20, 1996 order.

## II.

### Standard of Review

■■■ This appeal arises from the circuit court's granting of summary judgment to the defendant. Our review is *de novo*. Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). In reviewing summary judgment, this Court will apply the same test that the circuit court should have used initially, and must determine whether "it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). As with the circuit court, we "must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion," that is, the appellant. *Painter v. Peavy*, 192 W.Va. at 192, 451 S.E.2d at 758.

## III.

### Discussion

The appellant concedes that 13–year–old Michael Lee Brown was a trespasser, but argues that the circuit court erred on two grounds. The appellant first contends that genuine issues of material fact exist regarding whether the appellee acted in a willful or wanton manner towards Michael Lee Brown. Second, the appellant contends that genuine issues of material fact exist concerning whether the appellee created a dangerous condition on his property.

We discuss these arguments separately.

### A.

### Evidence of Willful and Wanton Conduct

■■■ West Virginia's rules relating to premises liability are well settled and clearly

established.[1]  In Syllabus Points 1 and 2 of *Huffman v. Appalachian Power Co.,* 187 W.Va. 1, 415 S.E.2d 145 (1991), we defined the term "trespasser," and set out the duty owed a trespasser by a landowner:

> 1.  A trespasser is one who goes upon the property or premises of another without invitation, express or implied, and does so out of curiosity, or for his own purpose or convenience, and not in the performance of any duty to the owner.

> 2.  The owner or possessor of property does not owe trespassers a duty of ordinary care.  With regard to a trespasser, a possessor of property only need refrain from wilful or wanton injury.

Accordingly, under ordinary circumstances, a landowner cannot be held liable to a trespasser when the landowner fails to use reasonable care to maintain the premises in a reasonably safe condition, or fails to carry on activities so as not to endanger a trespasser. The landowner may only be held liable upon a showing by the trespasser that the landowner acted in a willful or wanton manner towards the trespasser.

■  In this case, appellee Carvill contends on the one hand that there is no evidence in the record that could support a jury finding that he acted willfully or wantonly.  The appellee argues that the chain in dispute was down only for brief periods of time around the Memorial and Labor Days holidays but was otherwise "almost always up," and argues that this fact was known to others in the neighborhood.[2]  The appellee testified and maintains that he was unaware that the chain strung across the road traversing his property was likely to cause serious bodily injury or death to trespassers.  The appellee argues there is substantial evidence that the chain was painted bright orange, and the appellee and other deponents believed that there was still orange paint on it at the time his deposition was taken.

The appellant, on the other hand, points to evidence that the chain was often taken down, and that it was down on the date of Michael's death.  Appellant also argues the appellee testified in his deposition that he was aware that trespassers rode motorcycles on his property, that trespassers were riding motorcycles on his property on the date in question, and that it is obvious that an unmarked chain hung across a road at the level of a person riding a motorcycle would cause serious bodily injury or death.  The appellant further argues that there is substantial evidence that the chain was rusted, brown, and blended in with the road such that it would not be seen by someone riding a motorcycle, and that it was not until after Michael's death that the appellee marked the chain.[3]

After reviewing the contentions of the parties and the extensive record, we conclude that the aforementioned facts establish the existence of genuine issues of material fact concerning whether the appellee acted willfully or wantonly towards 13–year–old Michael Lee Brown.  We therefore reverse the circuit court's order granting summary judgment on this point.

### B.

### *Evidence of a Dangerous Condition on the Appellee's Property*

A second theory advanced by the appellant is that the allegedly rusty, unmarked chain, stretched by the appellee across the road with the knowledge that trespassing motorcycle riders routinely used the road, constituted a dangerous condition on the appellee's property.

■  We have held that when a landowner creates a dangerous condition upon his

---

**1.**  For a general discussion of the duties of a landowner towards trespassers, and trends in the law of premises liability, *see* T. Kleeh, *Self v. Queen: Retaining Eighteenth Century Feudalistic Jurisprudence to Determine a Landowner's Duty of Care,* 100 W.Va.L.Rev. 467 (1997).

**2.**  This argument is contradicted by the appellee's deposition testimony that he took the chain down

on April 17, 1994 and left the chain down when he entered his property to remove a dogwood tree.

**3.**  The record suggests that in the days after the accident, the appellee tied blaze orange surveyor's ribbon to the chain.

property that is likely to cause serious bodily injury or death, and the landowner is aware that trespassers intrude into the area where the dangerous condition exists, that the landowner must then exercise due care towards the trespassers. We set forth a four-part test for addressing "dangerous conditions" in Syllabus Point 4 of *Huffman v. Appalachian Power Company*, 187 W.Va. 1, 415 S.E.2d 145 (1991), where we held:

> For a trespasser to establish liability against the possessor of property who has created or maintains a highly dangerous condition or instrumentality upon the property, the following conditions must be met: (1) the possessor must know, or from facts within his knowledge should know, that trespassers constantly intrude in the area where the dangerous condition is located; (2) the possessor must be aware that the condition is likely to cause serious bodily injury or death to such trespassers; (3) the condition must be such that the possessor has reason to believe trespassers will not discover it; and, (4), in that event, the possessor must have failed to exercise reasonable care to adequately warn the trespassers of the condition.

The circuit court did not apply this four-part test to the evidence in the record, and held that the *Huffman* test did not apply because "[a] chain, or the existence of a chain, on Defendant's property does not constitute a dangerous instrumentality."

▆▆▆ We have examined our prior cases discussing the "dangerous instrumentality" or "dangerous condition" doctrine and believe that it is next to impossible to craft a general, all-inclusive definition of what is "dangerous" when determining which instrumentalities or conditions may subject a landowner to liability. We have held in our cases that everything from dynamite,[4] blasting powder,[5] and fumes from a leaking gasoline pipeline[6] to a pool of water[7] and a pile of sawdust[8] could be a dangerous instrumentality or condition. Throughout these cases, it is clear that whether or not a condition on property is dangerous is based on a determination of whether the condition "constitutes a hidden danger or trap." Syllabus Point 2, in part, *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964). Whether an instrument or condition is a hidden danger or trap to a trespasser requires that the instrument or condition be viewed in its context. More often than not, the determination of whether something is "dangerous" is a question of fact rather than law. *See, e.g., Koger v. Ferrin*, 23 Kan.App.2d 47, 926 P.2d 680 (1996); *Weatherby v. Meredith*, 341 So.2d 139, 140 (Ala.1976).[9]

▆▆▆ We therefore hold that in evaluating whether an instrument or condition on a landowner's property is dangerous under the circumstances, the role of the trial court is to determine whether the instrument or condition, making all factual inferences in favor of the trespasser, could reasonably be considered dangerous under the circumstances. Whether the instrument or condition may reasonably be considered dangerous under the circumstances is a legal question, and whether the instrument or condition is, in fact, dangerous under the circumstances is

---

4. *Wiseman v. Terry*, 111 W.Va. 620, 163 S.E. 425 (1932).

5. *Colebank v. Nellie Coal & Coke Co.*, 106 W.Va. 402, 145 S.E. 748 (1928); *Wellman v. Fordson Coal Co.*, 105 W.Va. 463, 143 S.E. 160 (1928).

6. *Adams v. Virginian Gasoline & Oil Co.*, 109 W.Va. 631, 156 S.E. 63 (1930).

7. *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964).

8. *Sutton v. Monongahela Power Co.*, 151 W.Va. 961, 158 S.E.2d 98 (1967).

9. As one court stated,

> Some instrumentalities are almost always, if not always, dangerous; for example, dynamite. On the other hand, some instrumentalities are almost always, if not always, not dangerous; for example, a powder puff. Many instrumentalities are dangerous or not dangerous because of their use or potential use under the circumstances. For example, a small pocketknife would normally not be designated a dangerous instrumentality, but if it, with an open blade, is given to a small child in a nursery, it might become a dangerous instrumentality.
>
> It is not always possible to say that a particular instrument is dangerous or not dangerous as a matter of law.

*Howell v. Hairston*, 261 S.C. 292, 300–01, 199 S.E.2d 766, 770 (1973).

a question for jury determination. If reasonable persons could differ on the issue, the question is one for the jury, but when the facts are undisputed, whether an instrument or condition is dangerous is a question of law to be decided by the court.

 Applying this rule to the case at hand, we believe that the circuit court erred in holding, as a matter of law, that the chain erected by the appellee across the road on his property was not a dangerous condition. The circumstances surrounding the death of 13–year–old Michael Lee Brown are greatly in dispute, and inferences may be drawn from the record that the chain at issue in this case was dangerous under the circumstances. There is evidence in the record that suggests that the chain was unmarked, difficult to see, and that it was often taken down and later stretched across a road used by trespassing motorcyclists. We hold that a question of fact exists over whether a chain under these circumstances constituted a dangerous condition on the appellee's property.

We also hold that questions of fact remain concerning the four-part test espoused in *Huffman, supra.* First, there is evidence in the record that could support a holding that the appellee knew or should have known that trespassers in the form of motorcycle riders (including the decedent on the day in question) were intruding onto his property and regularly using the road in question. Second, we believe that a reasonable person could conclude that an unmarked chain under these circumstances would be likely to cause serious injury or death to such trespassers. Next, as detailed previously, substantial questions of fact exist about whether the chain was marked, and thereby whether the appellee had reason to believe that trespassers would not discover it. And lastly, the evidence is in dispute as to whether the appellee exercised reasonable care to adequately warn trespassers of the allegedly dangerous condition.

## IV.

### Conclusion

For the aforementioned reasons, the circuit court's August 20, 1996 summary judgment order is reversed and the case is remanded for further proceedings. Additionally, this Court's prior opinion in this case, *Brown v. Carvill,* 498 S.E.2d 22 (W.Va.1997), is vacated.

Reversed and remanded.

Justice McCUSKEY dissents, in part, and concurs, in part.