576 S.E.2d 520

Randle L. MILLER, Plaintiff
Below, Appellant

v.

Randall A. JEFFREY and Laurel Coal
Corp., a West Virginia Corporation,
Defendants Below, Appellees.

No. 30254.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 18, 2002.

Decided Oct. 25, 2002.

William W. Pepper, Esq., Andrew S. Nason, Esq., Pepper, Nason & Hayes, Charleston, for Appellant.

Ancil G. Ramey, Esq., Hannah B. Curry, Esq., Steptoe & Johnson, Charleston, for Appellee Laurel Coal.

MCGRAW, Justice.

Appellant Randle Miller was injured in a car accident while at work when his vehicle collided with a vehicle operated by appellee Randall Jeffrey, who was also at work, and was employed by appellee Laurel Coal. Mr. Miller sued Mr. Jeffrey, Laurel Coal, and Hobet Mining, on whose property the accident occurred. The court granted summary judgment for Hobet. At trial, the court allowed the jury to consider the issue of whether or not Mr. Miller was wearing his seatbelt, and the jury returned a defense verdict. Appellant and Hobet subsequently agreed to dismiss Hobet from the case. Before this Court, appellant argues that the jury was not instructed properly. Because we agree with the appellant on this issue, we reverse.

## I.

## BACKGROUND

Appellant Randle L. Miller was employed by a private security firm to provide security for Hobet Mining, Inc., at a strip mine in Boone County, West Virginia. Hobet Mining contracted with Laurel Coal Corporation to mine coal at this location. Appellee Randall Jeffrey was employed as a driver for Laurel Coal at this same mine site. On August 12, 1999, appellant Miller was involved in a head-on-collision with appellee Jeffrey on a private access road at the mine. As a result, Mr. Miller suffered a broken pelvis and other injuries.

Because large trucks used the road to haul coal, the normal rules of the road were changed to make the road a "drive left" road, where drivers were instructed to drive in the left lane (from their perspective), as one would drive in England or other countries following such a practice. The parties dispute just what caused the accident, but appellant Miller contends that Mr. Jeffrey was in the wrong lane. In addition to suing Mr. Jeffrey, appellant Miller sued Laurel Coal, on a theory of *respondent superior,* and Hobet Mining, for negligent design and construction of the road.

Appellant contends that, at trial, the defense introduced evidence that suggested that Mr. Miller was not wearing his seatbelt at the time of the accident. Although Mr. Miller asserted that he was wearing his seatbelt, the court permitted the defense to raise this issue in closing argument. Counsel for Mr. Miller offered several jury instructions with respect to this issue, which were refused by the court. Specifically, plaintiff's instruction number twenty would have instructed the jury to not consider the failure to wear seatbelts when assessing percentages of negligence.

The judge granted summary judgment in favor of Hobet Mining, and appellant Miller proceeded to trial against appellees Jeffrey and Laurel Coal. The jury returned a de-

fense verdict, refusing to find that defendant/appellee Jeffrey was negligent, which verdict necessarily exonerated his employer Laurel Coal as well. Mr. Miller moved for a new trial and the trial court denied that motion by order dated October 2, 2001. Mr. Miller appealed that order and the lower court's grant of summary judgment to this Court.

Prior to the date of argument, Mr. Miller and Hobet Mining presented a joint motion to dismiss Hobet Mining from the case, which motion this Court granted in an order dated May 9, 2002. Because we find that the evidence and argument concerning seatbelt usage could have mislead the jury in the absence of proper instruction, we reverse the decision of the lower court.

## II.

## STANDARD OF REVIEW

This case touches upon questions of the admissibility of evidence, the appropriateness of closing argument, and the sufficiency of jury instructions. However, we believe that the cynosure of this case is whether the instructions given to the jury were adequate to prevent confusion in the jurors' deliberations. Specifically, appellant argues that the court erred in not giving his proffered instruction. We have noted that: "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de*

*novo.*" Syl. pt. 1, *State v. Hinkle*, 200 W.Va. 280, 489 S.E.2d 257 (1996). In this case, we believe the question before us is wether or not the jury was instructed properly, thus our review is *de novo.*

## III.

## DISCUSSION

The basis of appellant's argument is that the jury should not have been able to consider the seatbelt issue at all, with respect to negligence, or with respect to damages. Specifically, he argues that the court erred both in allowing the defendant/appellee to make certain arguments in closing and by not giving a jury instruction proffered by the appellant. Appellant Miller offered an instruction that would have directed the jury to ignore the seatbelt evidence when assessing percentages of negligence.[1] Appellant also argues that the court erred in allowing the defendant/appellee to argue in closing that appellant Miller was negligent for not wearing his seatbelt, and that the jury should consider this when determining who was at fault for the accident.[2]

To the contrary, appellee argues that the seatbelt evidence was admissible, that the court was correct in refusing appellant's proffered instruction, and that none of this affected the outcome of the case; or in other words, the jury was supplied with sufficient evidence to conclude that appellant Miller caused the accident, thus the jury had no need to consider the seatbelt issue at all.[3]

---

1.  The instruction offered, but not given, read:
    The Court instructs the jury that there is no evidence to support a finding that the accident in question was in any manner caused by the failure to wear seatbelts. In assessing percentages of negligence in this case, you should not take into consideration the failure to wear seatbelts.

2.  During closing argument, counsel for the defendant/appellee argued "[H]e's negligent because he wasn't wearing his seat belt. You can consider his not wearing a seat belt as to his fault, and also as to his injuries." Closing argument transcript pp. 5–6. "Again, the Plaintiff's negligence is demonstrated by not running the left edge of the roadway, by confronting Mr. Jeffrey head on, and not wearing his seat belt. You can use that to demonstrate his negligence." Closing argument transcript p. 20.

3.  Appellee also argues that the Court should dismiss this appeal because appellant did not designate the entire trial transcript. Appellee claims that without the entire transcript the Court cannot ascertain the merits of appellant's arguments, confirm representations regarding evidence introduced or argument made by counsel, or make a rational decision as to whether the trial court's actions were supported by the evidence presented. However, it is clear to this Court from the portion of the transcript that was designated by appellant that defense counsel argued the seatbelt issue in closing, and that this argument was based upon evidence presented at the trial. Furthermore, it is manifest from the record before us that the court failed to instruct the jury properly on this issue, thus we are unpersuaded by appellee's argument on this point.

Again, because we feel that proper instruction might have cured other evidentiary problems, we focus upon the instruction issue.

Both parties point to West Virginia Code § 17C–15–49 (1993) and to a decision of this Court in a case with somewhat similar facts, *Wright v. Hanley*, 182 W.Va. 334, 387 S.E.2d 801 (1989). In that case, Mr. Wright and Ms. Hanley were involved in a car accident on a street in Wheeling and both accused the other of running a red light and causing the accident. The parties presented evidence that suggested that Mr. Wright and his children passengers were not wearing seatbelts. Also, Ms. Hanley offered a jury instruction, given by the court, that the jury could consider Mr. Wright's failure to use seatbelts both in deciding damages and in assessing fault for the collision.[4]

█ In its decision to reverse the lower tribunal, this Court considered the applicability of evidence of seatbelt usage both in determining negligence for the accident, and in determining the amount or extent of damages. After examining law from several jurisdictions, the Court rejected the defense argument that the common law duty to act with reasonable care extended to a duty to wear seatbelts. Noting that our Legislature had not yet acted on this issue, the Court stated:

> Because of the continuing legislative debate over a mandatory automobile seat belt law, we decline to judicially impose a penalty on the occupant who chooses not to wear a seat belt and refrain from imposing a standard of conduct that the legislature has thus far been unsuccessful in imposing.

*Wright v. Hanley*, 182 W.Va. 334, 336, 387 S.E.2d 801, 803 (1989) (footnote omitted). While observing that a minority of states had found that such a common law duty existed, the Court held: "In the absence of mandatory seat belt legislation, no violation of a common law duty of reasonable care may be construed from failure to wear an automobile seat belt." Syl. pt. 1, *Wright.* This position is consistent with the longstanding theory that a common law practice will remain unless supplanted by statute or later Court decision. "Such parts of the common law as are not displaced by existing statutes, and have not been expressly repealed, are still in effect." Syl. pt. 5, *Harper v. Middle States Loan, etc.*, 55 W.Va. 149, 46 S.E. 817 (1904).

The *Wright* Court went on to consider whether a defendant could offer evidence of a plaintiff's failure to wear a seatbelt to demonstrate that the plaintiff had failed to mitigate damages. The Court found persuasive the logic of the Supreme Court of Rhode Island, which had stated "a plaintiff owes no duty to anticipate a defendant's negligence and to minimize damages by buckling up *before* the tortious impact occurs." *Wright v. Hanley*, 182 W.Va. 334, 337, 387 S.E.2d 801, 804 (1989) (quoting, *Swajian v. General Motors Corp.*, 559 A.2d 1041, 1046 (R.I.1989) (emphasis in original)).

Combining these two notions, that failure to wear a seatbelt has no bearing on who is at fault for an accident, and that requiring anticipatory mitigation of damages is at odds with the traditional functioning of our tort system, the Court ultimately held:

> In the absence of a mandatory statutory duty to wear seat belts, evidence of plaintiff's failure to wear a seat belt is not admissible in a negligence action to assess plaintiff's percentage of fault or to show plaintiff's failure to mitigate damages.

Syl. pt. 2, *Wright v. Hanley*, 182 W.Va. 334, 387 S.E.2d 801 (1989).

█ Of course, *Wright* predated our current seatbelt statute, now found in W. Va. Code § 17C–15–49 (1993). The statute provides, *inter alia*, that no one may operate a car on a public road unless seatbelts are used as described, and that a violation of the statute is not admissible as evidence of negligence. The statute reads in part:

---

4. The instruction at issue in *Wright* read, in part:
   If you believe that the failure of Mr. Wright to wear his safety belt was a negligent act on his part and further, if you believe that failure to wear the safety belt proximately caused or contributed to Mr. Wright's injuries, then you may consider this act of negligence as a factor in determining the amount of damages, if any, to be awarded to Mr. Wright and as a factor in assessing fault for the collision.
   *Wright*, 182 W.Va. at 335, 387 S.E.2d at 802.

(a) Effective the first day of September, one thousand nine hundred ninety-three, a person may not operate a passenger vehicle on a public street or highway of this state unless the person, any passenger in the back seat under eighteen years of age, and any passenger in the front seat of such passenger vehicle is restrained by a safety belt meeting applicable federal motor vehicle safety standards. . . .

(d) A violation of this section is not admissible as evidence of negligence or contributory negligence or comparative negligence in any civil action or proceeding for damages, and shall not be admissible in mitigation of damages: [except as provided, discussed below].

W. Va.Code § 17C–15–49 (1993). Both parties agree that, because the accident in this case occurred on a private road that the statute does not apply. However, we find it instructive that the Legislature, like this Court in *Wright*, also determined that evidence of not wearing a seatbelt should not be admitted to show the non-wearer was negligent. The statute goes on to discuss in paragraph (d) when and how seatbelt evidence may be used with respect to a victim's damages:

> Provided, That the court may, upon motion of the defendant, conduct an in camera hearing to determine whether an injured party's failure to wear a safety belt was a proximate cause of the injuries complained of. Upon such a finding by the court, the court may then, in a jury trial, by special interrogatory to the jury, determine (1) that the injured party failed to wear a safety belt and (2) that the failure to wear the safety belt constituted a failure to mitigate damages. The trier of fact may reduce the injured party's recovery for medical damages by an amount not to exceed five percent thereof. In the event the plaintiff stipulates to the reduction of five percent of medical damages, the court shall make the calculations and the issue of mitigation of damages for failure to wear a safety belt shall not be presented to the jury. In all cases, the actual computation

of the dollar amount reduction shall be determined by the court.

*Id.* Again, the parties agree that the accident occurred on a private road, and it is clear that the statute, by its own language, restricts itself to those driving "on a public street or highway of this state." [5] Thus, we find ourselves in a posture very similar to that of *Wright*. Under the facts of this case, there is indeed an absence of applicable statutory authority, so we find the language of syllabus point two of *Wright* controlling. Thus, we hold that when our mandatory seatbelt statute, West Virginia Code § 17C–15–49 (1993), is inapplicable, evidence of a plaintiff's failure to wear a seatbelt is not admissible in a negligence action to assess plaintiff's percentage of fault or to show plaintiff's failure to mitigate damages.

█ In the instant case, because our statute did not apply, the court erred in allowing evidence or argument of Mr. Miller's alleged failure to wear his seatbelt. Because of the unusual facts of this case, it is understandable that this evidence found its way into the record. However, the court compounded this problem and erred by not instructing the jury to ignore such evidence.

We concur with appellant Miller's position that this evidence and argument could have confused the jury. The defense made a powerful, common sense argument that Mr. Miller "should have" been wearing his seatbelt. If "should" means only that it would have been in Mr. Miller's interest to do so, we agree. However, people "should" do many things that our law does not require. Allowing the jury to consider the effect wearing a seatbelt might have had on the accident confuses several distinct issues. As we noted of the instruction given in *Wright*:

> Finally, in addition to finding that the seat belt instruction was not properly given, we also find that the instruction was very confusing in that it referred to the appellant's refusal to wear a seat belt as constituting a negligent act which may or may not have proximately caused the appellant's injuries. The jury may very well

---

**5.** The language of the statute also limits itself to certain vehicles and to the location of passengers inside of a vehicle, none of which is germane to this opinion.

have used this instruction in determining the plaintiff's percentage of negligence.

*Wright v. Hanley*, 182 W.Va. 334, 337, 387 S.E.2d 801, 804 (1989). We by no means wish to discourage people from wearing seatbelts. It is clear that seatbelts prevent thousands of deaths and serious injuries every year.

■ However, we also do not wish to undermine the longstanding goals of loss spreading and recovery for victims that are the foundation of our modern tort system. Under the limited facts of this case, our mandatory seatbelt statute, W. Va.Code § 17C–15–49 (1993), did not apply. Because the statute is inapplicable, our holding in *Wright* controls, and the seatbelt evidence should never have been admitted. The appellant's proffered jury instruction might have overcome this error, but the lower court refused to give it. We conclude that this left the jury without the guidance it needed to properly consider this case. Accordingly, we must reverse and remand for a new trial.[6]

## IV.

### CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Boone County is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

DAVIS, C.J., dissenting.

Randle Miller (hereinafter referred to as "Mr. Miller") received an adverse jury verdict on injuries he sustained from an automobile collision he claimed was caused by Randall Jeffrey (hereinafter referred to as "Mr. Jeffrey").[1] One of the issues presented by Mr. Miller was that the trial court improperly allowed the jury to consider evidence that he was not wearing a seatbelt at the time of the accident. The majority agreed with Mr. Miller and reversed the

judgment. For the reasons set out below, I dissent.

### A. The Jury Did Not Rely on the Seatbelt Evidence

Footnote six of the majority opinion summarily rejects Mr. Jeffrey's contention that the jury failed to consider the seatbelt evidence in rendering its verdict. The opinion states that "[w]e find this argument unavailing, as we cannot know what the jury considered, in spite of the presence of significant evidence that Mr. Miller may have caused the accident." This conclusion by the majority opinion is wrong. The record is quite clear as to what the jury considered. The majority opinion simply ignored the evidence in order to attain its desired result.

The verdict form illustrated that the jury did not consider any evidence regarding seatbelt use for purposes of assessing comparative negligence or the mitigation of damages. The relevant portion of the jury verdict form revealed:

### VERDICT FORM

1. Do you find, by a preponderance of the evidence that Defendant Randall Jeffrey was negligent and that his negligence was a proximate cause of the accident? Yes _____ No X

If you answered "no" to the foregoing, then you must not answer any more questions on this form and shall return a verdict in favor of the Defendant. However, if you answered "yes", please proceed to the next question.

2. Do you find, by a preponderance of the evidence, that the Plaintiff Randle Miller was negligent and that his negligence was a proximate cause of the accident? Yes _____ No _____

3. Please apportion the negligence of the parties, percentage wise. Remember, the two figures must total 100%. If you

---

6. Appellee argues that the jury never had to consider the seatbelt question because there was plenty of other evidence that suggested that Mr. Miller was entirely at fault for the accident. We find this argument unavailing, as we cannot know what the jury considered, in spite of the presence of significant evidence that Mr. Miller may have caused the accident.

1. Mr. Jeffrey's employer, Laurel Coal Corporation, was also named as a defendant.

answered "No" to the preceding question, then you should put "0" for Plaintiff, Randle.

Plaintiff, Randle Miller     _____ %
Plaintiff, Randall Jeffrey     _____ %

Clearly, the verdict form showed that the jury did not believe that Mr. Jeffrey was at fault in causing the accident. Consequently, the jury never reached the issue of seatbelt use. That issue would have been relevant only if the jury had concluded that Mr. Jeffrey was in someway negligent. To the extent that the majority opinion found that evidence involving the use of seatbelts should not have been allowed, then the jury verdict form indicates that such error was harmless as the jury never considered the seatbelt evidence. In essence, the jury attributed no fault to Mr. Jeffrey. Until the decision in this case, the rule in our jurisprudence has been that "[a] judgment will not be reversed because of the admission of improper or irrelevant evidence when it is clear that the verdict of the jury could not have been affected thereby." Syl. pt. 7, *Torrence v. Kusminsky*, 185 W.Va. 734, 408 S.E.2d 684 (1991). *Accord* Syl. pt. 3, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995); Syl. pt. 7, *Starcher v. South Penn Oil Co.*, 81 W.Va. 587, 95 S.E. 28 (1918). Based upon the foregoing authority, the longstanding harmless error rule required this Court to affirm the judgment in this case.

### B. The Wright Decision Does Not Control this Case

The majority opinion concluded that "the language of syllabus point two of *Wright v. Hanley*, 182 W.Va. 334, 387 S.E.2d 801 (1989), controll[ed]" the disposition of the instant case. In syllabus point 2 of *Wright*, this Court held that "[i]n the absence of a mandatory statutory duty to wear seat belts, evidence of plaintiff's failure to wear a seat belt is not admissible in a negligence action to assess plaintiff's percentage of fault or to show plaintiff's failure to mitigate damages." Neither the facts nor the holding in *Wright* controlled the disposition of this case.

*Wright* involved an accident on a "public highway" during a time period when West Virginia had no mandatory seatbelt law. Thus, *Wright's* pronouncement was limited to public highways when no authority for wearing seatbelts existed. However, in the instant case, the accident occurred on a "private, nonpublic, road." More importantly, authority existed that required seatbelts to be worn on the private road.

The majority opinion conspicuously omitted mentioning that the owner of the private road, Hobet Mine, had a written rule that required the use of seatbelts while driving on its private road. In fact, Mr. Miller's employment as a security guard at Hobet Mine required him to enforce the written seatbelt rule. Mr. Miller admitted this fact during cross examination:

Q. As a security guard, were you advised as to the use of seat belts for people on the property?

A. Seat belts, drive on the left-hand side, it's a haul road.

Q. So that was the rule that Hobet had for the people on the property?

A. Yes.

. . . .

Q. At the time of this accident, you understood, then, that you were to be using a seat belt on the roadway, as well as keeping to the left?

A. Yes.

In view of the fact that Hobet Mine had a written rule requiring the use of seatbelts on its private road, the decision in *Wright* simply has no application in this case.

### C. The Majority Decision is Against Public Policy

In 1993, the legislature responded to the deaths and catastrophic injuries that had been occurring in many automobile accidents by enacting a mandatory seatbelt law for public highways. *See* W. Va.Code § 17C–15–49 (1993) (Repl.Vol.2000). The seatbelt issue became a public policy matter because of the overwhelming evidence that seatbelt use could diminish the extent of injuries sustained in automobile accidents. Hobet Mine took the initiative to adopt this public policy position by creating a written rule mandating the use of seatbelts on its active private road. Hobet Mine went so far as to employ security guards, such as Mr. Miller, to enforce its private roadway rules. The majority opinion has destroyed Hobet Mine's initiative to save lives and prevent serious injuries on its pri-

vate road. *C.f. Brown v. Carvill*, 206 W.Va. 605, 527 S.E.2d 149 (1998) (motorcyclist decapitated by chain strung between two posts across private road).

To be consistent with public policy, the majority opinion should not have created a rule that discourages private road owners from establishing safety measures to protect persons driving on their private roads. Syllabus point 4 of the majority opinion states "[w]hen our mandatory seatbelt statute . . . is inapplicable, evidence of a plaintiff's failure to wear a seatbelt is not admissible in a negligence action to assess plaintiff's percentage of fault or to show plaintiff's failure to mitigate damages." This pronouncement is simply inconsistent with the strong public policy promoting the use of seatbelts to save lives and prevent unnecessary injuries. *See, e.g.,* 17C–15–49(f) ("[T]he governor's highway safety program, in cooperation with the division of public safety and any other state departments or agencies and with county and municipal law-enforcement agencies, shall initiate and conduct an educational program designed to encourage compliance with safety belt usage laws.").

The proper rule of law that should have been formulated by the majority in this case required application of W. Va.Code § 17C–15–49, instead of the application of the *Wright* decision. Under W. Va.Code § 17C–15–49(d), the failure to wear seatbelts is not admissible as evidence of contributory or comparative negligence, or in mitigation of damages. However, the statute provides a caveat which states:

> That the court may, upon motion of the defendant, conduct an in camera hearing to determine whether an injured party's failure to wear a safety belt was a proximate cause of the injuries complained of. Upon such a finding by the court, the court may then, in a jury trial, by special interrogatory to the jury, determine (1) that the injured party failed to wear a safety belt and (2) that the failure to wear the safety belt constituted a failure to mitigate damages. The trier of fact may reduce the injured party's recovery for medical damages by an amount not to exceed five percent thereof.

W. Va.Code § 17C–15–49(d). Logically, this provision should apply analogously to civil actions involving accidents that occurred on private roads when, at the time of an accident, the owners of such roads had in place written rules requiring the use of seatbelts.

Consequently, in the instant case, I believe the majority opinion should have formulated a rule that incorporated W. Va.Code § 17C–15–49(d). It is quite unfortunate that the majority chose to abandon logic and instead created a rule of law that encourages drivers not to wear seatbelts on private roads.

Even though I believe public policy required the principles of W. Va.Code § 17C–15–49 to be applied to this case, I do not believe that such an application would have entitled the plaintiff to a new trial. As I indicated earlier, the jury did not consider seatbelt evidence on any issue in this case. The jury concluded that Mr. Jeffrey did not cause the accident. As such, no new trial should have been granted.

Therefore, I dissent. I am authorized to state that Justice Maynard joins me in this dissenting opinion.